## MADISON PATENT CORPORATION v. HARRY WILLIAMS MFG. CO. et al.

### Nos. 48 C 382, 48 C 387, 48 C 393, 48 C 394.

United States District Court.
N. D. Illinois, E. D.

May 31, 1949.

Casper W. Ooms and Callard Livingston, Chicago, Ill., for plaintiff.

Clarence E. Threedy, Benjamin M. Becker, Bernard Savin and Robert L. Kahn, Chicago, Ill., for defendants.

BARNES, Chief Judge.

Questions of the infringement and validity of two patents are involved in this suit.

One of the patents involved is Breitenstein et al. No. 2,155,929, issued April 25, 1939, on an application filed August 21, 1936 (hereinafter referred to as Patent 929). Patent 929 relates to a score registering device for registering a score by an illumination upon a screen. Only the defendants, Harry Williams Manufacturing Co. (hereinafter referred to as Williams), and Chicago Coin Machine Company (hereinafter referred to as Chicago Coin) are charged to infringe Claims 1, 3, 4 and 5 of Patent 929. The plaintiff has selected Claim 5 as typical. It reads as follows:

"5. In a device of the class described positionable as a compact projector unit in an exhibitor structure and comprising a horizontal support carrying a turnable disk having an edge through which a beam of light may pass, a source of light, a screen, a lens system associated with the disk to project light from the source through the disk to the screen, means on said support for securing said source of light in optical alinement with the edge of

the disc and lenses, a stop means determining a starting postition from which the disk is to be turned, electromagnetically operable mechanical means to move the disk step by step in a direction away from the stop means, and spring means to drive the disk reversely to its starting position."

The court will take up, first, the question of infringement of Patent 929.

Claim 1 of this patent includes, as a part of the supposed combination called for by the claim "lenses carried on the support respectively on opposite sides of the disk and in alinement with each other and with said marginal edge thereof (the disk)." The lenses referred to in Claim 1 are a condenser lens, arranged between the light source and the marginal edge of the disk, and a projector lens, arranged between the marginal edge of the disk and the screen. Williams' and Chicago Coin's devices have nothing intervening between the light and the marginal edge of the disk, while between the marginal edge of the disk and the screen there is found, first, a slotted plate, and, second, a projector lens. It is thus apparent that in neither the Williams device nor the Chicago Coin device is there included "lenses carried on the support, respectively, on opposite sides of the disk."

The claims of this patent are narrowly worded and belong to that class of patent claims which, if valid, must be narrowly construed. The defendants Williams and Chicago Coin, in making their respective devices, have, as has been pointed out, omitted a necessary and indispensable element of the combination of Claim 1. Accordingly, there is no infringement of Claim 1 by either defendant.

Claims 3, 4 and 5 of Patent 929 may be considered together. Each of these claims includes, as a part of the combination claimed, "a lens system associated with the disk to project light from the source through the disk to the screen." As the court has pointed out, the devices of Williams and Chicago Coin have, in the order named, a light source, a rotatable disk, a slotted plate, a projector lens, and a screen. It will be observed that there is no "lens system which projects light from the source through the disk," that the defendants use only one lens, which does not project light through the disk, that the slotted plate cannot be said to project light or to have any other effect than to cut off light, and that, in the defendants' devices, light is projected through the disk by the light source itself and not by any lens or lens system. The plaintiff seeks to have the slotted plate used by the defendants declared to be the equivalent of the condenser lens of the claims. The court does not believe that this slotted plate can be said to be the equivalent of the condenser lens or any other type of lens, but even if, under other circumstances, it could be held to be equivalent to a lens, it is not a part of the "lenses * * * on opposite sides of the disk" claimed by Claim 1. Nor is it a part of a "lens system associated with the disk to project light from the source through the disk," claimed by Claims 3, 4 and 5. A slotted plate does not perform the functions attributed to the lenses of Claims 1, 3, 4 and 5.

The court concludes that the claims of this patent are not infringed by the devices of Williams or those of Chicago Coin.

If it were not for the fact that there is a possibility of the reviewing courts disagreeing with this court on the question of infringement, the court, having decided that there is no infringement, would refrain from passing upon the question of the validity of the patent, but since there is a possibility that the reviewing courts may disagree with this court's conclusions in respect of non-infringement, it would probably save the time of the parties and of the courts if the court proceeds and considers the question of validity of this patent.

The elements of typical claim 5 of Patent 929 are:

1) a horizontal support

2) a turnable disk

3) a source of light

4) a screen

5) a lens system

6) means for securing the source of light etc.

7) stop means

8) electromagnetically operated mechanical means

9) spring means.

Each of the foregoing elements, alone and in combination, is old in the art. Shyvers et al. Patent No. 2,053,379, issued September 8, 1936, on an application filed February 10, 1936, discloses:

1) a horizontal support

2) a turnable disk

3) a source of light

4) a screen

6) means for securing the source of light, etc.

7) stop means (as the disk is spring driven, a stop means is necessarily provided to limit the drive of the disk by the driving spring)

8) electromagnetically operated mechanical means

9) spring means.

It will be observed that the only element of typical Claim 5 of Patent 929 which is not present in the Shyvers Patent is the fifth element, the lens system, and it is by this element that plaintiff seeks to distinguish the disclosure of the Shyvers Patent from Claim 5.

Cave Patent No. 1,792,412, issued February 10, 1931, on an application filed March 28, 1929, discloses:

1) a horizontal support

2) a turnable disk

3) a source of light

4) a screen (not shown, but no doubt included)

5) lens system

6) means for securing the source of light, etc.

8) electromagnetically operated mechanical means.

Potter Patent No. 2,138,821, issued December 6, 1938, on an application filed March 5, 1936, discloses, in the following order, a light source, a lens, the equivalent of a disk, a lens and a screen, the same elements in the same order as disclosed by Patent 929 in suit.

Buchner Patent No. 1,398,835, issued November 29, 1921, on an application filed November 12, 1920, shows a lens system associated with a light source.

■ In the court's opinion, Claims 1, 3, 4 and 5 of Patent 929 disclose no invention over the patents referred to and they are, accordingly, invalid.

The second patent involved in this suit is Breitenstein Patent No. 2,281,262, issued April 28, 1942, on an application filed March 14, 1940 (hereafter referred to as Patent 262). Patent 262 relates to a combined step-up, escapement and reset mechanism for use in amusement and other apparatus. All four defendants, Williams, Chicago Coin, United Manufacturing Company (hereinafter referred to as United) and Exhibit Supply Co. (hereinafter referred to as Exhibit) are charged to infringe this patent. All of the claims of Patent 262 are in suit. Such claims are divided into two groups, one consisting of claims 1, 6 and 7 (of which claim 6 has been selected by the plaintiff as a typical claim), and the second group, consisting of claims 2 to 5 (of which claim 3 has been selected by the plaintiff as a typical claim). Said typical claims read as follows:

"3. A combined step-up, escapement and reset mechanism comprising a support carrying a turnable ratchet wheel movable from an initial starting position against a clock spring, a lever and pawl member on the support to step up the wheel, a lever and dog member on the support to prevent retrograde motion of the wheel, interrelated parts between the dog and pawl members, an escapement dog member for the wheel operatively associated with the lever and dog member, a third lever member on the support including means to engage a part on the escapement dog member, and separate actuating devices for the first, second and third lever members."

"6. A step-up mechanism comprising a support, a ratchet wheel turnable thereon from a starting position against a clock spring, a pawl to step up the wheel, a lever on the support including a spring pressed holding dog for the wheel, an escapement dog member fulcrumed on the same axis as the lever and spring connected to the lever to hold a stop portion thereof yielda-

bly against the lever, a wheel tooth engaging portion on the escapement dog member acting alternately with the holding dog, and means to actuate the lever."

The following devices are charged to infringe the following claims of Patent 262:

| Williams device, | Plf. Exh. | 6 | Claims 1, 6 and 7 |
| Williams device, | Plf. Exh. | 7 | Claims 1, 3, 4, 5, 6 and 7 |
| Williams device, | Plf. Exh. | 8 | Claims 1, 3, 4, 5, 6 and 7 |
| Williams device, | Plf. Exh. | 9 | Claims 1, 6 and 7 |
| United device, | Plf. Exh. | 10 | Claims 1, 6 and 7 |
| United device, | Plf. Exh. | 11 | Claims 1 to 7 inclusive |
| United device, | Plf. Exh. | 12 | Claims 1 to 7 inclusive |
| United device, | Plf. Exh. | 13 | Claims 1, 6 and 7 |
| Exhibit device, | Plf. Exh. | 14 | Claims 1, 6 and 7 |
| Exhibit device, | Plf. Exh. | 15 | Claims 1, 6 and 7 |
| Exhibit device, | Plf. Exh. | 16 | Claims 3 and 4 |
| Chgo.Coin device, | Plf. Exh. | 17 | Claims 1, 6 and 7 |
| Chgo.Coin device, | Plf. Exh. | 18 | Claims 1 to 7 inclusive |
| Chgo.Coin device, | Plf. Exh. | 19 | Claim 3 |
| Chgo.Coin device, | Plf. Exh. | H | Originally charged to infringe claims 1, 6 and 7 and in a supplemental bill of particulars such charge withdrawn and claim 3 instead charged to be infringed, which claim 3 was later withdrawn. |

Defendants concede infringement of the following claims of Patent 262 by the following devices, if such claims are valid:

| Williams device, | Plf. Exh. | 6 | Claims 1, 6 and 7 |
| Williams device, | Plf. Exh. | 7 | Claims 1, 6 and 7 |
| Williams device, | Plf. Exh. | 8 | Claims 1, 6 and 7 |
| Williams device, | Plf. Exh. | 9 | Claims 1, 6 and 7 |
| United device, | Plf. Exh. | 10 | Claims 1, 6 and 7 |
| United device, | Plf. Exh. | 11 | Claims 1, 2, 3, 6 and 7 |
| United device, | Plf. Exh. | 12 | Claims 1, 6 and 7 |
| United device, | Plf. Exh. | 13 | Claims 1, 6 and 7 |
| Exhibit device, | Plf. Exh. | 14 | Claims 1, 6 and 7 |
| Exhibit device, | Plf. Exh. | 15 | Claims 1, 6 and 7 |
| Chgo.Coin device, | Plf. Exh. | 17 | Claims 1, 6 and 7 |
| Chgo.Coin device, | Plf. Exh. | 18 | Claims 1, 2, 3, 6 and 7. |

Defendants deny infringement of the following claims of Patent 262 by the following devices:

| Williams device, | Plf. Exh. | 7 | Claims 3, 4 and 5 |
| Williams device, | Plf. Exh. | 8 | Claims 3, 4 and 5 |

United device,     Plf. Exh. 11 .......................... Claims 4 and 5
United device,     Plf. Exh. 12 .......................... Claims 2, 3, 4 and 5

Exhibit device,     Plf. Exh. 16 .......................... Claims 3 and 4

Chgo.Coin device,     Plf. Exh. 18 .......................... Claims 4 and 5
Chgo.Coin device,     Plf. Exh. 19 .......................... Claim 3.

■ The Williams devices (plaintiff's Exhibits 7 and 8) do not infringe Claims 3, 4 or 5 of Patent 262 for the reason that there are omitted from the devices not less than two of the elements of the combination called for by typical Claim 3. One of the omitted elements is "a third lever member on the support including means to engage a part on the escapement dog member." The other omitted element is "separate actuating devices for the first, second and third lever members."

United device (plaintiff's Exhibit 11) infringes Claims 4 and 5. Certainly so far as these claims are concerned it is difficult to distinguish plaintiff's Exhibit 11 from the device of the patent.

In the court's opinion, United device (plaintiff's Exhibit 12) infringes Claims 2, 3, 4 and 5 of Patent 262. Two elements of typical claim 3, phrased as follows "an escapement dog member for the wheel operatively associated with the lever and dog member, a third lever member on the support including means to engage a part on the escapement dog member" are, in plaintiff's Exhibit 12 formed integrally, but the use of an integral part, instead of two parts, does not avoid infringement.

In the court's opinion, Exhibit device (plaintiff's Exhibit 16) infringes Claims 3 and 4 of Patent 262. Plaintiff's Exhibit 16 includes an escapement dog and a third lever formed in one piece instead of two. Plaintiff contends, and the court agrees with the contention, that in this plaintiff's Exhibit 16 the third lever engages the escapement dog just as effectively when it is integrated with it as when it is a separate piece and that the "means to engage a part of the escapement dog member," called for by the claim, in Exhibit 16 is the integral connection between the lever and the dog.

Apparently the only defense made against the charge of infringement of claims 4 and 5 of Patent 262 by Chicago Coin device plaintiff's Exhibit 18 is that there is no proof that the exhibit embodies electric circuits, as defined, as parts of the combinations of the claims. Claim 4 does require "separate electromagnetic devices on the support including circuits for causing operation of the three lever members," and Claim 5 does require "separate electromagnetic devices including circuits for operating the three lever members." The exhibit in evidence includes three electromagnets, each with a core and means for attaching electric wires thereto. Accordingly, the court holds that there is sufficient evidence of circuits to require a finding of infringement.

Chicago Coin device plaintiff's Exhibit 19 is charged to infringe Claim 3 of Patent 262. The exhibit in question includes an escapement dog formed integrally with a third lever. The actuating means for the third lever is stated by the witnesses to be present in the form of a shuffle board, which engages the third lever in the course of the operation of the same. The defendant's contention is that there is no third lever including means to engage a part on the escapement dog. The means is the integral connection and the exhibit infringes Claim 3.

The court comes now to the question of the validity of Patent 262. The defendants cite against the validity of Claims 1, 6 and 7 of Patent 262, defendants' Exhibit HX, Solinski Patent No. 2,222,217, Hall Patent No. 1,816,526, and defendants' Exhibit P-2. The defendants also contend that typical Claim 6 defines an inoperative device.

■ It has been stipulated that as early as February, 1939, devices similar to defendants' Exhibit HX were made and used by Chicago Coin and sold in large quantities. The only difference between the device of typical claim 6 and the Chicago

Coin device, defendants' Exhibit HX, is that in defendants' Exhibit HX the escapement dog is not fulcrumed on the same axis as the holding dog (as is the escapement dog of typical claim 6). No new or beneficial result is accomplished by mounting the escapement dog on the same axis as the holding dog. The fact is that the escapement dog, whether mounted on the same axis as the holding dog or a separate axis, performs in either case the identical function of permitting the step-by-step retraction of the ratchet wheel. Whether mounted on the same axis or a separate pin, the escapement dog co-operates with the holding dog in the same manner to accomplish such step-by-step return of the ratchet wheel. In the court's opinion, typical claim 6 does not define patentable novelty or invention over Chicago Coin's prior device Exhibit HX.

Solinski Patent No. 2,222,217 was issued November 19, 1940, on an application filed December 30, 1939. The specifications of that patent contain the following statement:

"A further object is the provision of an escapement including pawls spaced on opposite sides of a pivot for rocking movement as a unit into and out of stopping engagement with the teeth on a ratchet disc, one of the pawls being movably mounted on the other and being urged by spring means into a normal position against a stop carried on said other member and being so disposed that when the escapement is rocked from normal position the normally disengaged pawl will be disposed in operative relationship with the teeth of the ratchet member prior to disengagement of the other pawl, the relatively movable pawl yielding upon engagement with the ratchet teeth responsive to continued rocking of the escapement to withdraw the main pawl."

It will be observed that the escapement mechanism of the Solinski Patent differs from the escapement mechanism of typical claim 6 of the patent in suit only by reason of the absence from the Solinski mechanism of the co-axial characteristic of typical claim 6. The absence of this characteristic has been considered above in connection with the consideration of defendants' Exhibit HX. The court is of the opinion that typical claim 6 does not disclose invention over Solinski 2,222,217.

The Hall Patent No. 1,816,526 was issued July 28, 1931, on an application filed Sept. 26, 1929. In this Hall patent the escapement mechanism comprises a holding dog and an escapement dog, formed as an integral unit and mounted upon a single pin. They accomplish the same result and function in the same manner as the two-piece escapement dog and holding dog of typical claim 6 of the patent in suit. In the court's opinion, typical claim 6 discloses no invention over the Hall Patent No. 1,816,526.

In the prior art device, defendants' Exhibit P-2, which was stipulated to have been used in game apparatuses as early as February 13, 1939, the escapement mechanism is an integral holding dog and escapement dog. They perform the same function and operate in the same manner as the two-piece escapement dog of typical claim 6 of the patent in suit. In the court's opinion, typical claim 6 discloses no invention over defendants' Exhibit P-2.

The defendants contend that unless some means is provided to disengage the step-up pawl from the ratchet wheel the device of typical claim 6 is inoperative. The plaintiff argues that the device may be made operative by substituting for the specific form of step-up pawl shown in Patent 262 a step-up pawl which, when at rest, is disengaged from the ratchet wheel. The court is of the opinion that the defendants' contention that a claim, directed to an inoperative device, is void must be sustained.

The defendants cite, as against the validity of claims 2 to 5 of Patent 262, Nicolaus Patent No. 2,216,957, defendants' Exhibit P-3, Kelley Patent No. 437,859, Breitenstein Patent No. 2,155,929, and defendants' Exhibit HX. The defendants also contend that Patent 262 is invalid for failure to disclose a means or mechanism for separately energizing coils 41 and 50.

Nicolaus Patent No. 2,216,957 was issued on an application filed April 7, 1939. Its disclosures are, therefore, prior art as against Patent 262, whose earliest date is

its filing date, March 14, 1940; but the only way a complete zeroizing can be effected in the Nicolaus device is through a repeated, step-by-step reducer and the use of a separate electrical interrupter or motor switch to feed successive pulsations to the step-back mechanism. Nicolaus does not anticipate.

Defendants' Exhibit P-3 was used in game apparatuses by Bally Manufacturing Company as early as July 29, 1939. In this device there is employed a coil for actuating a step-up pawl. A second coil actuates a holding dog and an escapement dog. A third coil operates a third lever pivoted on the support and having means adapted to engage a part on the escapement dog to move the latter from engagement with the ratchet wheel to permit resetting of the ratchet wheel to zero position. The defendants contend, and with reason, that defendants' Exhibit P-3 accomplishes everything functionally that is accomplished by the device of Patent 262 and that the devices are substantially identical in function and result. But this is the most that can be said. The characteristic of defendants' Exhibit P-3 which distinguishes it from the device of Patent 262 is this: It shifts the entire escapement assembly out of the plane of the ratchet wheel in order to accomplish the complete resetting action. Defendants' Exhibit P-3 is an entirely different machine from that of the Patent 262, and this is what prevents defendants' Exhibit P-3 from being an anticipation. Furthermore, certain elements of Claim 3 are not found in defendants' Exhibit P-3. For instance, the P-3 device does not have any "interrelated parts" between the stepping pawl and holding dog, as required by claim 3, and the P-3 stepping pawl is normally disengaged from the ratchet wheel and is of a type not co-acting at all with any holding dog, while the stepping pawl of Patent 262 is normally in engagement with the ratchet wheel.

Kelley Patent No. 437,859, issued October 7, 1890, on an application filed January 4, 1890, and Breitenstein Patent 929 in suit each have merely a combination step-up and re-setting mechanism. They do not have an escapement mechanism, and they, accordingly, do not anticipate the disclosures of typical claim 3 of Patent 262.

Defendants' Exhibit HX cannot perform the escapement and resetting operations required of the devices defined by Claims 2, 3, 4 and 5 of Patent 262. The device of those claims functions to perform both kinds of re-set. Furthermore, only two actuating devices are included in defendants' Exhibit HX and there is no separate actuating device for the holding dog lever as required by typical Claim 3. Defendants' Exhibit HX does not have the "separate electromagnetic devices" of claim 4 or "circuits for operating the three levers" in claim 5. Defendants' Exhibit HX does not anticipate.

The defendants contend that Patent 262 is invalid for failure of the patentee to comply with the statutes and rules of the Patent Office relating to patent drawings. The court has concluded and indicated that if Claims 2 to 5 are valid it is because they disclose and claim a "combined step-up, escapement and re-set mechanism." Unfortunately, the drawings do not do that. In order to show such a mechanism the drawings would be required to show, among other matters, that the escapement actuating coil and the reset actuating coil can be separately energized. This they do not do. The court, for a time, was inclined to agree with the plaintiff's contention that if the defect is found in any claim it is found only in claim 5, but with some (only some, because this patent at the best is not of momentous significance) reluctance has come to the conclusion that the device of the patent cannot be a "combined step-up, escapement and reset mechanism" unless the escapement actuating coil and the reset actuating coil may be separately energized.

The defense of laches was mentioned during the trial but was not sustained by evidence.

Counsel may co-operate, if they will, in the drafting and presentation (within 10 days, if possible) of drafts of findings of fact, conclusions of law, and a judgment order designed to give effect to the views hereinabove expressed.

94

The court is grateful for the assistance of counsel in its study of the problems involved in this case. Such errors as there may be in the foregoing are not due to any act or omission of counsel.